This is a bill for partition of two tracts of land on the Newark meadows, one four acres and one six acres. The right to partition six acres is undisputed. Answer has been filed by the Marcus L. Ward Home for Respectable Bachelors, c., claiming possession of the whole four acres. They rely primarily on the 1901 amendment to section 1 of the act to quiet title, which reads as follows: *Page 431 
"* * * and whenever any lands within this state shall not, by reason of their extent or by reason of such lands being wild lands or wood or waste or uninclosed or unimproved lands, be in the actual peaceable possession of the owner or person claiming to own the same, the owner or person claiming to own the same in fee under a deed or other instrument, duly recorded within this state, who shall have paid the taxes upon such lands, and to whom or to whose grantors the taxes upon such lands shall have been assessed for five consecutive years immediately prior to the commencement of suit, shall be presumed to be in peaceable possession of such lands within the meaning of this act; provided, no other person be in possession thereof; and it shall be lawful for such person so presumed to be in possession to bring and maintain a suit in chancery to settle the title of said lands and to clear up all doubts and disputes concerning the same, and such person so presumed to be in possession shall be entitled to all the benefits of and subject to all the provisions of this act."
The Home claims that under this amendment, having paid the taxes on this property for over five years preceding the filing of its counter-claim, it is entitled to the whole four-acre tract by reason of adverse possession.
As I read this clause, it seems to me that all this section means is that, whatever taxes have been paid on wild lands for more than five years, the one paying them may maintain a bill to quiet title, but that does not mean, in my opinion, that this adverse possession is proved. It only gives him the right to come in and attempt to prove his adverse possession.
Claim has been made, on the other hand, that in a bill to quiet title the one filing it must be in peaceable possession, and this has been violated, because when the answer was filed there was already a bill for partition, and, therefore, that the home was not at the time it filed its answer in peaceable possession.
Without deciding this question, let us consider what rights the defendant has under the answer, admitting that it will stand. There has been some testimony before me on both sides of a rather vague and uncertain character as to adverse possession, not sufficient, in my mind, to establish title in either party, because I am of the opinion that the mere fact that taxes were paid even on wild lands, under the cases, is not sufficient to establish adverse possession. *Page 432 
The question then arises as to what the record title as far as it goes shows, and what the rights of the parties are under it. The title starts with a deed made in 1779 by Henry King.
When he died he left a will in which he made this provision:
"I give and bequeath unto son Abram and John, their heirs and assigns forever, all my last estate of land and meadows on conditions following. That after my youngest child shall become of age that then the whole last estate shall be valued by three persons of good repute chosen by my executors, and the third part of the value of said estate shall be paid by my son Abram and John unto my son Henry to him, his and assigns forever."
By deed of record on March 22d 1822, John King conveyed to John King, Jr., and Harmonus Spear his share of the lands of Henry King, and which deed conveyed as follows: Also two equal third parts of the whole tract of the salt meadow belonging to the estate of Henry King, deceased, being the share of said John H. King as described by mutual agreement between the heirs of the said deceased and the share of Henry King, which the said John H. King has since purchased.
While there is no evidence in writing of a physical division of the land, there is in evidence a bond given by Abram H. King to John King, Jr., and Harmonus Spear, dated the 3d day of October, 1822, which binds Abram H. King to abide by and perform and keep any award of division that shall be made by the commissioners named in this bond. And the bond also says that said award shall be made in writing under the hands and seals of the said arbitrators or any two of them, and ready to be delivered to the said parties in partition, or such of them as shall require thesame, on or before the 20th day of October next ensuing.
Abram King did not die until 1852, thirty years afterwards, and he did nothing during this thirty years to repudiate the conveyance of two-thirds of the four acres made by his brothers, nor did he call for the arbitrators' award. He also left a will in which he devised his salt meadow, not his interest therein, to his daughter. *Page 433 
Without going more elaborately into the title to this property, I have come to these conclusions — first, that there has been no adverse possession on either side; second, that, according to the meagre records, the complainant herein is entitled to partition two-thirds of the four acres, and that one-third of the four acres has descended to the Marcus L. Ward home, and that, when partition is had, proper allowance should be made to the Marcus L. Ward home for its share of taxes paid on the whole tract.